The State ex rel. Farm City Investment Company v. Ira D. Beals, Judge of Circuit Court, et al.—24 S. W. (2d) 629.

Court en Banc, February 4, 1930.

*James W. Davis* and *Arch B. Davis* for relator.

*F. L. Arthaud* for respondents.

BLAIR, J.—This is an original proceeding in this court against respondent as judge of the Circuit Court of Livingston County to prevent him from taking certain steps in a case pending in said court, entitled, "In the Matter of the Honey Creek Drainage District of Livingston County, Missouri," the object and purpose of which is to extend the boundaries of such drainage district to include, among other lands in Livingston County, certain lands owned by relator. Our provisional rule issued. Service thereof was waived. Respondents thereafter filed return. Thereupon relator filed its motion for judgment on the pleadings. This authorizes us to look to the pleadings for the facts.

For the purposes of this opinion, but without so deciding, we will assume that the Honey Creek Drainage District was duly and legally organized at the September, 1927, term of the Livingston County

Circuit Court. Relator's lands were not included in the district as originally organized. Thereafter the members of the board of supervisors of the district filed in said circuit court their petition to extend the boundaries of the district to include relator's lands and other lands. Notwithstanding relator's objections, such proceedings were had in said court at its April term, 1928, that an order was made and entered of record extending the boundaries of said district so as to include the relator's lands therein and appointing commissioners to assess benefits and damages on account of such extension.

After moving unsuccessfully for a new trial and in arrest of judgment relator was granted an appeal to this court from said order and decree of the circuit court. Thereafter and within the time fixed by the court, relator filed and the clerk of said court in vacation approved its appeal bond. A certified copy of said judgment and order granting an appeal was thereafter filed in the office of the clerk of this court and said cause is now pending in this court. ·

Notwithstanding such appeal, the circuit court, acting through its commissioners, thereafter proceeded to assess benefits against and damages to the lands taken into the district and, on November 16, 1928, the commissioners filed their report. This report did not assess any damages to or benefits against the lands of relator. On January 9, 1929, the court made an order of record approving and confirming said report. Thereafter and apparently at the same term, said court made an order setting aside its approval and confirmation of such report and permitted it to be withdrawn for correction. The correction so made constituted the addition of a sheet describing relator's lands and assessing benefits and damages in respect thereto. The benefits assessed against such lands approximated the sum of $15,000. Other steps were subsequently taken in the circuit court, the purpose of which was to carry such corrected report of the commissioners into effect.

Respondents insist that the taking of an appeal by relator did not operate as a supersedeas and that it was the right and the duty of respondent judge to proceed with the case, including the assessment of damages and benefits, regardless of relator's appeal. If relator is correct in its contention that its appeal did operate as a supersedeas, then respondent judge exceeded his jurisdiction in respect to the proceedings undertaken in his court subsequent to such appeal, prohibition is the appropriate remedy and our provisional rule should be made absolute, regardless of other questions pressed upon us for decision. Hence, we first take for consideration the question of the effect of the granting of the appeal and the filing and approval of an appeal bond.

Respondent relies on Section 4412, Revised Statutes 1919, which reads as follows:

"No appeal from any action of the circuit court had under this article shall be permitted to act as supersedeas or to delay any action or the prosecution of any work begun under the provisions of this law."

This provision appears as Section 36 of the 1913 Circuit Court Drainage Act. [Laws 1913, p. 253.] That act repealed Article 1, Chapter 41, Revised Statutes 1909, and thereafter comprised a complete scheme for drainage districts organized by the circuit court. The only provision for an appeal from a decree organizing a drainage district was found in Section 16 of the 1913 Act. This section was repealed and reenacted with some changes by Laws of 1919, at page 322 (now Sec. 4392, R. S. 1919), and reads as follows:

"Any person may appeal from the judgment of the court, and upon such appeal there may be determined either or both of the following questions: First, whether just compensation has been allowed for property appropriated and, second, whether proper damages have been allowed for property prejudicially affected by the improvements."

Since at that time an appeal could only be granted to determine whether the allowance of compensation made by the commissioners was just and since the lands appropriated could not be taken by the drainage district until the damages awarded by the commissioners to the owners had been paid to such owners or had been paid to the clerk of the circuit court for them (Sec. 29, Laws 1913; Sec. 4405, R. S. 1919), there was then no reason why an appeal from the allowance of the commissioners should operate as a supersedeas and hold up the progress of the improvement.

By Section 40, of the 1913 Act provision was made for changing and extending the boundaries of an existing drainage district, but no provision was made for an appeal from a decree extending such boundaries. Section 40 was repealed in 1919 and a new section of the same number was enacted in lieu thereof. [Laws 1919, p. 323.] This became Section 4416 of the 1919 statutes. There for the first time provision was made for an appeal by the landowner or the drainage district from a judgment of the court extending or refusing to extend the boundary lines of a district. It was there provided that "such appeal shall be taken in the manner provided for in the code of civil procedure."

Said Section 40, as it stood after the 1919 Act, was repealed in 1921 (Laws 1921, p. 293), and another section of the same number was enacted in lieu thereof, together with new Sections 4416a and 4416b, all relating to the subject of the extension of boundaries of drainage districts. No mention of the right of appeal from a decree

extending or refusing to extend the boundaries of the drainage district appears in the 1921 Act. But by Laws of 1923 at page 167, Section 4416 of the 1921 Act was repealed and a new section of the same number was enacted in lieu of it. There the right of such appeal was again provided for. We quote from page 169 of the 1923 Act as follows:

"Any owner of lands or other property, or the board of supervisors, for and [on] behalf of the district, shall have the right to appeal from the finding or decree of the court extending or refusing to extend the boundary lines of such district, said appeal to be prosecuted the same as provided for appeals under the civil code."

This provision refers us to Article XVI, of Chapter 12, which is the general code of civil procedure, in relation to appeals and writs of error. The procedure there outlined provides that the appealing party may give an appeal bond, and, when the same has been approved by the court, it shall stay execution under the judgment appealed from. Such appeal bond may be approved by the clerk in vacation, under certain conditions. [Sec. 1473, R. S. 1919.] The filing of the recognizance shall stay all further proceedings from the judgment appealed from. [Sec. 1475, R. S. 1919.] Such supersedeas therefore naturally follows the same steps taken in an appeal under Section 4416, of the 1923 Act.

While Section 4412, Revised Statutes 1919, in terms applies to all of the provisions of Article I, Chapter 28, and expressly provides that no appeal shall be permitted to act as a supersedeas, such section was enacted at a time when appeals could only be taken from awards of damages and benefits by the commissioners. When an appeal was allowed by the 1923 Act from the decree of the court extending or refusing to extend the boundaries of a drainage district, Section 4412 was not referred to or specifically amended. Of course, the Legislature could authorize an appeal from any sort of an order made by the circuit court under the Drainage Act, and, if it so willed, permit such appeal to act as a supersedeas as to such order. By providing in the 1923 Act that an appeal from a finding or decree extending or refusing to extend the boundaries of a drainage district should be prosecuted in the same manner as provided for appeals under the civil code, all beneficial results of such an appeal at once became applicable to an appeal under the Drainage Act. The Legislature thereby impliedly provided for a stay of execution or supersedeas upon the giving and approval of an appeal bond, for such is one of the beneficial results of the provisions of the civil code relating to appeals generally. To this extent Section 4412 was repealed by the 1923 Act and such provision must give way to the provisions of the civil code in respect to appeals from orders extending or refusing to extend the boundaries of a drainage district.

The history of the several amendments fortifies us in this conclusion. The 1919 Act provided for an appeal from a judgment of the court extending or refusing to extend the district boundaries and provided that such appeal should be *taken* in the manner provided in the civil code. By the 1921 Act both the right of appeal and the method of taking it were done away with. But both were restored in 1923 and the provisions respecting the procedure on appeal were strengthened and made the same in all respects as already provided for appeals in the civil code. In 1919 the appeal was taken as appeals are taken under the code. That provision did not indicate as clear an intention on the part of the Legislature to make the appeal effective as did the language of the 1923 Act. Judging from the passage of these various acts there must have been a legislative struggle for several years over the propriety of authorizing an appeal in drainage boundary extension cases and. making such appeal of benefit to the appellant after it was taken. The advocates of this right appear to have prevailed finally.

A stay of execution or supersedeas is absolutely necessary to carry out the purpose of the Legislature in authorizing an appeal from a decree of the court extending the boundaries of drainage districts. Without the right of an appellant to give an appeal bond and to have proceedings stayed until the appeal has been determined, the right to appeal would be of no avail in many cases. This would be true if the court, during the pendency of an appeal, could proceed as if no appeal had been taken and could extend the boundaries of the district and take appellant's property for any purpose the district might desire. Before the appeal could be determined, appellant's land might be rendered absolutely worthless for the purpose for which he wished to keep and use it and a subsequent reversal of the decree extending the boundaries of the drainage district would be of no benefit to him.

The 1923 Act provides that "the amendments contained herein are declared to be remedial in character, shall be liberally construed by the courts," etc. A liberal construction of the provision that appeals under the act should be governed by the procedure upon appeals, as provided by the civil code, certainly would include supersedeas after an appeal bond had been given and approved.

Appellant argues that it would render the Drainage Act unworkable if an appeal by a landowner and the giving of an appeal bond could operate as a supersedeas, because such supersedeas would cancel all proceedings as to such land, if such appeal prevailed, no matter to what extent the work had proceeded. That is an argument which should be addressed to the Legislature. Probably it has already been made to it, judging from its vacillating policy concern-

ing the right of appeal in this class of cases during the years from 1919 to 1923, inclusive. But the delay feared by respondent can largely be obviated by prompt application for advancement of such appeal for an early hearing on the ground that it affects a matter of great public concern.

We accordingly rule that the 1923 Act repealed by implication Section 4412, Revised Statutes 1919, in so far as appeals provided for by Section 4416 of the 1923 Act are concerned, and that supersedeas intervenes where an appeal bond has been given and approved. For this reason respondent was without authority to proceed through his commissioners to assess the benefits and damages to relator's land after it had been granted an appeal and its appeal bond was filed in the court and approved by the clerk in vacation, under authority given by the court. Respondent clearly exceeded his jurisdiction as judge of said court in attempting to take such further proceedings.

This view of the effect of relator's appeal renders it unnecessary to consider other questions concerning acts of respondent subsequent to the granting of such appeal. As to questions sought to be raised by relator in this proceeding concerning the propriety of the court's action before such appeal was taken, it suffices to say that those questions are matters of error properly to be considered when relator's appeal comes on for hearing.

Relator's motion for judgment on the pleadings must be and is sustained. Our provisional rule is accordingly made absolute. All concur, except *Walker, J.,* absent.