THE STATE EX REL. MAY DEPARTMENT STORES COMPANY and OCEAN
ACCIDENT & GUARANTEE CORPORATION v. GEORGE F. HAID ET AL.,
Judges of St. Louis Court of Appeals.—38 S. W. (2d) 44.

Court en Banc, April 7, 1931.

568

*Jones, Hocker, Sullivan & Angert, J. C. Sheppard* and *James C. Jones, Jr.,* for relators.

570

*Foristel, Mudd, Blair & Habenicht* for respondents.

SEDDON, C.—This is an original proceeding in mandamus, commenced in this court on February 1, 1930, wherein we granted our alternative writ, after due consideration of the relators' petition or application therefor. The proceeding has been twice argued to this court, sitting en banc. Upon the final hearing and submission of the proceeding, the Court en Banc ordered the writer of this opinion, as a commissioner of the court, to sit with the Court en Banc, and the cause was assigned to the writer for the preparation of an opinion.

The relators seek the award and issuance of our peremptory writ of mandamus to compel the respondents, the judges of the St. Louis Court of Appeals, to hear and determine upon the merits an appeal, taken by relators to the said Court of Appeals, in a certain cause or proceeding under the Workmen's Compensation Act of this State, entitled "Catherine Brocco, widow of John Brocco, deceased, Respondent, vs. May Department Stores Company (Employer), and Ocean Accident and Guarantee Corporation (Insurer), Appellants," being cause No. 20812 upon respondents' docket, and to require the respondents "to adjudicate and determine whether there was sufficient competent evidence in the record certified to the Circuit Court of the City of St. Louis by the Workmen's Com-

pensation Commission, and made a part of the abstract of the record filed by the relators in the St. Louis Court of Appeals in said cause, to sustain the final award of the Missouri Workmen's Compensation Commission'' in said cause or proceeding. The respondents, by opinion filed on January 7, 1930, refused to adjudicate and determine the aforesaid compensation proceeding upon the merits, giving as their reason for such refusal that the evidence had and taken before the Workmen's Compensation Commission, and returned by the commission and filed in the Circuit Court of the City of St. Louis, had ''not been preserved through (by) a bill of exceptions kept alive by a motion for a new trial,'' by reason of which respondents concluded that they ''are unable to pass upon the assignments of error brought here by appellants,'' and that there was ''nothing before us for review, except the record proper, and that the evidence adduced before the (Workmen's Compensation) Commission is not a part thereof;'' wherefore, respondents affirmed the judgment of the circuit court reversing the final award of the Workmen's Compensation Commission in said compensation proceeding. [Brocco v. May Department Stores Co. et al., 22 S. W. (2d) 832.]

The respondents, by way of return to our alternative writ, demur to the relators' petition for the writ, upon the ground that the petition does not state facts sufficient to entitle relators to the relief prayed, and respondents, therefore, move that the alternative writ be quashed. Such being the status of the pleadings herein, we must look to relators' petition for the issuable facts. [State ex rel. v. Beals, 24 S. W. (2d) 629.] The facts are thus stated in relators' petition:

On May 25, 1927, and prior thereto, one John Brocco was an employee of relator, May Department Stores Company, in the city of St. Louis, and was within the operation of the Missouri Workmen's Compensation Act, and, while so employed, said John Brocco died on the 28th day of May, 1927.

On July 2, 1927, Catherine Brocco, the dependent widow of the said John Brocco, filed her claim for compensation under the Workmen's Compensation Act with the Workmen's Compensation Commission. Said claim came on for hearing before Alroy S. Phillips, one of the members of the Workmen's Compensation Commission, and on the 18th day of August, 1927, said Alroy S. Phillips made a finding and award in favor of the said Catherine Brocco, and against the relators, under said Compensation Act, for an aggregate sum of $7,271.

Thereafter, and within the time and in the manner prescribed by the Workmen's Compensation Act, relators applied to the full Commission for a review of the finding and award of the said Alroy S. Phillips in favor of the said Catherine Brocco, as aforesaid, and upon a final hearing before the full Commission, said Com-

mission, on the 7th day of March, 1928, made and entered its findings in favor of relators, and against the said Catherine Brocco, and rendered a final award, denying compensation to the said Catherine Brocco, under the Workmen's Compensation Act, on account of the death of the said John Brocco.

From the findings and final award of the Compensation Commission, as aforesaid, the claimant, Catherine Brocco, duly appealed to the Circuit Court of the City of St. Louis, and upon notice of said appeal, the Compensation Commission, in conformity with Section 44 of the Compensation Act, returned to the Circuit Court of the City of St. Louis, under its certificate, all the documents and papers on file in the matter, together with a transcript of the evidence introduced at the hearing before the Compensation Commission, and the findings and final award of said commission.

Upon the hearing of said cause in the Circuit Court of the City of St. Louis, that court, on October 4, 1928, rendered its decision and judgment, reversing the findings and final award of the Workmen's Compensation Commission, on the grounds (a) that the facts found by the commission did not support the award, and (b) that there was not sufficient competent evidence in the record to warrant the making of such award.

Thereafter, and within four days after the rendition and entry of said judgment of the circuit court, and during the same term of said court, the relators filed their motion for a new trial and for a rehearing of said cause, which said motion was overruled by the circuit court on the 17th day of December, 1928, and during the December, 1928, term of said court.

And thereupon, and on the 29th day of December, 1928, and during the December (1928) term of said court, relators filed their affidavit for an appeal in said cause, and an appeal was allowed relators to the St. Louis Court of Appeals by the circuit court.

Relators perfected their appeal in said cause to the St. Louis Court of Appeals, and said cause was thereafter entered and docketed in the St. Louis Court of Appeals as "Catherine Brocco, Widow of John Brocco, deceased, Respondent, v. May Department Stores Company, a corporation (Employer), and Ocean Accident & Guarantee Corporation (Insurer), Appellants," and was No. 20812 on the docket of said court.

No bill of exceptions was filed in the circuit court by relators in said cause, but the same record which had been certified to the circuit court by the Workmen's Compensation Commission was embodied in and made a part of relators' abstract of the record filed in the St. Louis Court of Appeals in said cause, including, in addition thereto, the judgment of the circuit court, motion of relators for a new trial and for a rehearing, the order of the circuit court overruling said motion, the affidavit of relators for an appeal, and

the allowance by the circuit court of such appeal to the St. Louis Court of Appeals in said cause.

Relators assigned as error in the St. Louis Court of Appeals the action of the circuit court in reversing the final award of the Workmen's Compensation Commission on the grounds that (a) the facts found by the commission did not support the award, and (b) that there was not sufficient competent evidence in the record to warrant the rendition of the award.

Said cause came on for hearing in the St. Louis Court of Appeals, and the respondents herein, as judges of the St. Louis Court of Appeals, on January 7, 1930, rendered and promulgated an opinion in said cause, in which the respondents held, adjudicated and adjudged (a) that there was nothing before them for review except the "record proper" in said cause, and that the evidence introduced at the hearing before the Workmen's Compensation Commission and the findings of said Commission were no part of said record; and (b) that a bill of exceptions containing the evidence introduced at the hearing before the Workmen's Compensation Commission was necessary in the circuit court in order for the respondents to determine and adjudge whether there was sufficient competent evidence to sustain the final award of the Workmen's Compensation Commission, and that since no such bill of exceptions had been filed by relators in the circuit court, respondents had no power, authority or jurisdiction to determine whether there was sufficient competent evidence to sustain the final award of the Workmen's Compensation Commission, or whether the findings of the Compensation Commission supported said award; and respondents refused and declined to adjudicate and determine whether there was sufficient competent evidence to sustain the final award of the Compensation Commission in said cause. A petition for a rehearing filed by relators in the St. Louis Court of Appeals was overruled by respondents on the 24th day of January, 1930.

No claim was made, either in the circuit court, or in the St. Louis Court of Appeals, that the Workmen's Compensation Commission acted in excess of its powers, or that the award was procured by fraud.

I. That mandamus is the proper and appropriate remedy to compel the judges of a Court of Appeals to hear and determine all issues properly presented by an appeal, when duly allowed and taken to such Court of Appeals, is not seriously questioned by the respondents herein. This court has uniformly held that, by virtue of Section 3, Article 6, of the Constitution of this State, which invests the Supreme Court with a general superintending control over all inferior courts of the State, we have the constitutional power, and it is our clear duty, by issuance of our writ of

mandamus, to require the judges of a Court of Appeals to exercise their whole jurisdiction in an appeal properly lodged with them, and to determine and adjudicate all issues properly presented therein. [State ex rel. v. Broaddus, 239 Mo. 359, 369; State ex rel. v. Ellison, 277 Mo. 46, 55; State ex rel. v. Trimble, 303 Mo. 284, 291.] It follows, therefore, that the relators are pursuing the proper remedy herein, provided, of course, that the facts, as presented by the relators' petition, and as admitted by respondents' demurrer or return to our alternative writ, clearly entitle relators to the award of our peremptory writ of mandamus.

II. The facts, as presented by the pleadings herein, disclose that the respondents have refused to examine and determine the merits of the appeal in the compensation proceeding aforesaid, and that respondents have refused to adjudicate and determine the alleged error of the circuit court in the rendition of its judgment in such compensation proceeding, as assigned by relators in the Court of Appeals. The respondents predicate their refusal to exercise jurisdiction in the respects mentioned upon the single ground that no exceptions were taken and preserved by relators, in the circuit court, to any ruling, order or judgment of the circuit court in the said compensation proceeding, and that the proceedings and evidence had and taken before the Workmen's Compensation Commission, and returned and filed in the circuit court, in such compensation proceeding, is not reviewable by respondents upon relators' appeal, because such proceedings and evidence were not incorporated in, and preserved by, a bill of exceptions in the circuit court. The precise question thus presented to this court for decision is whether, on an appeal from a final award of the Workmen's Compensation Commission in a proceeding under the Workmen's Compensation Act (Secs. 3299 to 3376, R. S. 1929), the evidence had and taken before the Compensation Commission, the documents and papers filed with the commission, and the findings of fact and final award of the commission, when certified and returned to the circuit court by the Compensation Commission, pursuant to the mandate and directions of Section 44 of said Compensation Act, constitute the record of the circuit court, so as to be reviewable on an appeal from a judgment of the circuit court, duly taken and allowed to a superior court, in the absence, and without the necessity, of a motion for new trial and a bill of exceptions in the circuit court.

Section 44 of the Compensation Act (R. S. 1929, sec. 3342) provides: "The final award of the commission shall be conclusive and binding unless either party to the dispute shall within thirty days from the date of the final award *appeal to the circuit court* of the county in which the accident occurred, or if the accident occurred

outside of this State, then in the county where the contract of employment was made. *Such appeal* may be taken by filing notice of appeal with the commission, whereupon the commission shall under its certificate *return to the (circuit) court all documents and papers on file in the matter, together with a transcript of the evidence, the findings and award, which shall thereupon become the record of the cause. Upon appeal no additional evidence shall be heard* and in the absence of fraud, the *findings of fact* made by the commission within its powers shall be *conclusive and binding.* The (circuit) court, on appeal, *shall review only questions of law* and may modify, reverse, remand for rehearing, or set aside the award upon any of the following grounds *and no other*:

"1. That the commission acted without or in excess of its powers.

"2. That the award was procured by fraud.

"3. That the facts found by the commission do not support the award.

"4. That there was not sufficient competent evidence *in the record* to warrant the making of the award.

"*Appeal (s) from the circuit court shall be allowed the same as in civil actions* . . ." (Italics and parentheses our own.)

The plain and positive language of said section of the Workmen's Compensation Act makes it manifest, we think, that the circuit court, upon an appeal taken to that court from a final award of the Compensation Commission, and in the absence (as here) of an issue of fraud in the procurement of the award, acts only in the capacity of a court of review, or as an intermediate court of appellate jurisdiction, and not as a court of original or trial jurisdiction. By the express language of the quoted section of the Compensation Act, the circuit court can *"review"* only questions of law, and no new or additional evidence can be heard by the circuit court (except, possibly, where the issue is raised for the first time in the circuit court that the award of the Compensation Commission "was procured by fraud," which is one of the four grounds specified in Section 44 of the Compensation Act whereon the circuit court may set aside the award), and the findings of fact of the Compensation Commission, in the absence of fraud, are made conclusive and binding upon the circuit court, such findings of fact being analogous to the verdict of a jury. [State ex rel. Brewen-Clark Syrup Co. v. Mo. Workmen's Compensation Comm., 320 Mo. 893, 898.] The Workmen's Compensation Act, by express language, or by implication, in no wise provides for, or contemplates, a trial *de novo* in the circuit court, or a hearing of any kind or character other than that usually accorded by an appellate court, sitting as a court of review and acting as a court of errors, in reviewing any cause or proceeding upon appeal. In construing Section 44 of the Workmen's Compensation Act, the Springfield Court of Appeals has rightly said, we think, in Ham-

576

mack v. West Plains Lumber Co., 30 S. W. (2d) 650, 651: "The circuit court on appeal to it from the finding of the commission has before it all the evidence heard by the commission. The circuit court in considering this testimony can do but two things in relation to the finding of facts by the commission. It may determine whether the facts found by the commission will support the award, and it may determine what part, if any, of the testimony heard by the commission was incompetent, and then may determine whether or not the competent evidence was sufficient to warrant the making of the award. The circuit court cannot try the case *de novo*, nor pass judgment on the weight of the evidence. As to the weight of the evidence the finding of the commission is conclusive and binding upon the (circuit) court. The right of the circuit court to set aside the finding of the commission because against the weight of the evidence, as it may once set aside the verdict of the jury in a civil action, does not exist under the Workmen's Compensation Act."

While Section 44 of the Compensation Act authorizes the circuit court to modify, reverse, remand for rehearing, or set aside a final award of the Compensation Commission upon the grounds that the facts as found by the Commission, do not support the award, or that there was not sufficient competent evidence *"in the record."* to warrant the making of the award, the authority so granted to the circuit court is essentially the same as the authority which is inherent in any court of review, and which is ofttimes exercised by our own court and by every appellate court, in holding that the evidence presented by the record on appeal is not sufficiently substantial to support the verdict of the jury below, or the decision and judgment of an inferior court, or in holding that the findings of fact, as made by the jury or inferior court, do not support the judgment entered in the court below. Expressing our thought somewhat differently: When the circuit court, on the appeal of a proceeding under the Compensation Act, enters an order affirming, or reversing (as the case may be), the award of the Compensation Commission upon the ground that the findings of fact made by the Commission do, or do not, support the award, or upon the ground that there was or was not, sufficient competent evidence adduced before the Commission to warrant the making of the award, the circuit court, in the entry of such order, is not making any *ruling* in the course and progress of a *trial* of the compensation proceeding, and which in ordinary civil cases would require the taking and saving of an exception in order to preserve the ruling for review on further appeal but the circuit court is rendering a final judgment upon a review of the precise record before it, and is merely designating in such final judgment the ground or grounds therefor, in the same or similar manner as any appellate court of review (usually in an *opinion*) expresses and states the grounds or reasons for the judgment ordered

and entered by such appellate court. A final judgment, in this and most jurisdictions, is held to constitute matter of *record* of the court in which it is entered, and hence to be self-preserving; that is to say, it is not necessary to take, or to save by bill of exceptions, an exception to the entry and rendition of a final judgment, in order that such final judgment may be reviewable on appeal. [4 C. J. secs. 1772, 1787, pp. 165, 185; Bateson v. Clark, 37 Mo. 31, 34; Railway Co. v. Carlisle, 94 Mo. 166, 169; Railroad Co. v. Lewright, 113 Mo. 660, 669; Roden v. Helm, 192 Mo. 71, 93; Hanks v. Hanks, 218 Mo. 670, 676.]

The procedural rule is thus clearly stated in 3 Corpus Juris, 951, sec. 839: "Proper exceptions are generally necessary, as in other cases, on appeals or writs of error from or to intermediate appellate courts, *where there has been a trial de novo. It is otherwise* where the intermediate court merely *reviews the record* brought up from the inferior court, since, if the intermediate court has erred in its *judgment,* the error will appear by the *record of that* (i. e., the intermediate) *court without any bill of exceptions."*

And it is further stated in 4 Corpus Juris, p. 219, sec. 1822: "Neither at the common law nor by the Statute of Westminster II was there any occasion or provision for taking a bill of exceptions from a court which was a *court of review* only, or from a court in the exercise of its jurisdiction as a court of errors, and the statutes have not generally provided for the giving of a bill of exceptions *by the appellate courts."* [Italics our own.]

The foregoing statements of the procedural rule are amply supported by juristic authorities. [Morris v. Deane, 94 Va. 572, 573; Hall v. Royal Neighbors, 231 Ill. 185, 192; Pardridge v. Morgenthau, 157 Ill. 395, 400; Bank of Akron v. Dole, 24 Colo. 94, 96.]

The question herein presented for our decision is closely analogous to that presented to this court in Quincy & Palmyra Railroad Co. v. Taylor, 43 Mo. 35, 38 et seq. Under the Constitution of 1865 (Art. 6, Sec. 1), the judicial power of this State was "vested in a supreme court, in *district courts,* in circuit courts, and in such inferior tribunals as the General Assembly may, from time to time, establish." Section 12, Article 6, of the Constitution of 1865, thus prescribed the jurisdiction of the district courts: "The district courts shall, within their respective districts, have like original jurisdiction with the Supreme Court, and appellate jurisdiction from the final judgments of the circuit courts, and of all inferior courts of record within the district, except probate and county courts. After the establishment of such district courts, no appeal or writ of error shall lie from any circuit court, or inferior court of record, to the Supreme Court, but shall be prosecuted to the district court, from the final judgments of which (i. e., the district court) an appeal or writ of error may be taken to the Supreme Court, in such cases as may be provided by

law.'' Thus, it readily will be seen that the district court, under the aforequoted provisions of the Constitution of 1865, was a court of review, and of *intermediate* appellate jurisdiction. Said this court, speaking through WAGNER, J., in the Taylor case, supra: "A preliminary question is raised in this case by the counsel for the respondent, who has filed a motion to dismiss the appeal, because the decision of the district court affirming the decision of the circuit court was not excepted to by the appellant, nor any exceptions preserved in the district court. The motion is based upon the assumption that, in order to enable this court to take cognizance of a cause, the decision of the district court must be excepted to, and exceptions regularly saved, in the same manner as in cases coming up from the circuit court to an appellate tribunal. No provision in the statute has been cited or referred to justifying or sustaining this position; and, after a careful examination, we have not been able to find any. . . . The law authorizes parties to bring cases from the district courts to this court either by appeal or writ of error, but that exceptions should be saved would only be required by resorting to an act of judicial legislation. In the absence of any direct statutory requirement, there is no apparent reason why the party should be compelled to except in the district court. The *whole record from the circuit court,* with the points regularly saved, is before *that court* (i. e., the *district court*) for revision; *they are an appellate tribunal;* and, if their opinion is objectionable or unsatisfactory, the *same record* is brought *here.* There are, indeed, no questions to be raised like those which spring up *in the course of a trial* at the circuit court, and *nothing to except to,* within the meaning of the term as used in the statute and by law-writers. The reasons for such a course do not exist, and there is no law on the subject. The *decisions in the district courts* are made from an examination of the *whole record,* and are supposed to be rendered with deliberation and care; and no reason is perceived why a party *should any more be required to take an exception from their decision than he would be to take one from a decision here,* in order to get to the Supreme Court of the United States, in a case where such a proceeding is authorized." (Above italics ours.)

In Wieber v. England, 216 N. W. 850, 853, the Supreme Court of South Dakota, in discussing the Workmen's Compensation Act of that State, which bears close similarity to the Compensation Act of our own State, has recently said: "The Workmen's Compensation Law contains special provisions governing arbitration of certain disputes between employers and employees, the object of which is to preserve all the advantages of inexpensive, prompt, and informal settlement of such disputes. The award, however, is not a judgment, but under Section 9475, Revised Code 1919, may be entered as a judgment without suit in the circuit court, where no demand for re-

view is made or appeal taken. But, *if an appeal is taken,* the award with the *entire record* comes into court (i. e., the circuit court) for *review, but not as an original action* on the award. The award on *review* must stand or fall *upon the record made,* which the statute provides shall contain a statement of the *evidence,* rulings, findings of fact, conclusions of law, decision and other matters pertinent to questions *arising before the board of arbitration.* The (circuit) court proceeds, *not as in an original action,* nor as in certiorari, but as *on appeal from a trial court of record, and rules applicable to appellate courts must govern."* (Italics and parentheses our own.)

Adverting again to Section 44 of the Workmen's Compensation Act, it is noticeable that the statute expressly provides that, upon the taking of an appeal to the circuit court from a final award of the Compensation Commission, the commission shall certify and return to the circuit court all documents and papers on file in the matter, together with a transcript of the *evidence,* and the findings and award of the commission, each and all of which matters shall *"thereupon become the record of the cause."* Thus, by the plain letter and language of the Compensation Act, is the transcript of the entire proceedings, including the *evidence,* had and taken before the Compensation Commission, made *the record* of the cause in the *circuit court.* Certainly, that which, by the express language of the Compensation Act, is made *"the record"* in the circuit court can be made no more *"the record"* of that court by the additional filing of a bill of exceptions containing and including that particular subject-matter and content which the statute itself defines as, and makes, *"the record of the cause"* in the circuit court. Respondents urge that the Legislature, in framing the Compensation Act, easily could have provided that all the matters certified and returned to the circuit court by the Compensation Commission should become the "record *proper"* of the cause in the circuit court, and (as respondents say in their brief) the "one additional word *'proper'* would have done the business." From such premise, respondents argue that the lawmakers must have had in mind the rulings of the courts to the effect that the evidence adduced on the *trial* of a cause is not a part of the "record proper," and that, by the omission of the word "proper," the Legislature manifested the intention that the certified transcript of the Compensation Commission, as returned and filed in the circuit court, should not take the character of the "record proper" in the circuit court, as the latter term has been defined in the jurisprudence of this State and by law text-writers. We think, however, that no peculiar and particular virtue is to be attached to the use of the word "proper." The term "record proper," as sometimes used by law text-writers, and as used in the written opinions and decisions of courts, has been adopted merely as a convenient means of expressing the distinction between those matters which, by

positive law, or by rule of practice, are made *"of record,"* and as such are self-preserving, and those matters occurring during the progress of the *trial* of a cause which otherwise would not be *of record* unless made so, and preserved, by bill of exceptions filed by order of the court.

The sole office and purpose of a bill of exceptions has been aptly expressed in Fenn v. Reber, 153 Mo. App. 219, 234, in the following language: "It is a mistake to overlook the very real and sole object and purpose of a bill of exceptions; that is, to make that a matter *of record* of the court which before then, and without the bill, *was not of record*—matters which arose in the *progress* of the case and not *otherwise* of record proper; *not of the record* of the court unless preserved by bill."

In 4 Corpus Juris, p. 98, sec. 1703, the scope and contents of *"the record"* of a court are thus stated and defined: "Whatever proceedings . . . the *law* or the *practice* of the court *requires* to be enrolled constitute and form a part of *the record;* but what it is not necessary to enroll does not form any part of the technical record unless made so *by order of the court* . . ." [Italics ours.]

The Compensation Act (Section 44) *requires* that the transcript of the proceedings and the evidence before the Compensation Commission, when certified and returned to the circuit court, shall "thereupon become *the record* of the cause" in the circuit court. No *order* of the circuit court is required, or is necessary, to make such transcript of proceedings and evidence *the record* of the circuit court; the law or statute, itself, by express and positive language, makes the proceedings and matter included in such transcript *the record* of the cause in the circuit court. The circuit court must accept the record transcript, as certified and returned to that court by the commission, in its entirety, and has no right, power, or authority to reject, modify, alter, add to, or take from, the record transcript, which, by the express requirements of the Compensation Act, becomes the permanent roll or *record* of the cause in the circuit court. In our view, there is no purpose or necessity of a bill of exceptions to make that matter *of record* in the circuit court (acting solely as an intermediate court of review) which the Workmen's Compensation Act, by express, clear, certain, and unambiguous language, makes *"the record"* of the cause upon an appeal to the circuit court from a final award of the Compensation Commission.

Nor do we deem it necessary and essential that a motion for new trial shall be filed in the circuit court in order that the proceedings and evidence had and taken before the Workmen's Compensation Commission, and certified and returned to the circuit court, may be reviewable in a superior appellate court, upon an appeal taken to such superior court from the final judgment of the circuit court, acting only as a court of review,

in a proceeding under the Workmen's Compensation Act. The chief office and purpose of a motion for new trial is to call to the attention of a *trial* court those errors (usually errors of procedure, and therefore errors which are properly matters of exception) occurring during the course or progress of the *trial* of a cause or proceeding, in order that the trial court may be afforded a more careful examination, and a more mature deliberation, of the errors occurring in the course of a *trial,* and the opportunity to correct such errors, without the delay, expense or other hardships of an appeal. [3 C. J. 960; Maplegreen Realty Co. v. Trust Co., 237 Mo. 350, 363; Cole v. Parker-Washington Co., 276 Mo. 220, 230; State v. Marshall, 36 Mo. 400, 405.] It is clear to our minds that there was no *"trial"* (in the true and accurate sense and meaning of that term) of the Brocco compensation proceeding in the circuit court of the city of St. Louis, but that the circuit court acted therein as a court of review only, merely reviewing the record transcript of the proceedings and evidence had and taken before the Compensation Commission, as certified and returned to the circuit court by the Compensation Commission, and entering a self-preserving final judgment upon such review of the record. There being no *trial* of such compensation proceeding in the circuit court, and there being no opportunity for errors of a procedural nature such as may occur during the course and progress of the trial of an ordinary action at law or in equity, there is, and can be, no necessity for the filing of a motion for new trial in the circuit court in order that a superior appellate court may review the self-preserving final judgment of the circuit court (sitting and acting as a court of review only), or in order that a superior appellate court may review those matters and proceedings which are made *of record* by express statutory law, and which are under review in the circuit court, in such compensation proceeding.

A like question was ruled by the Supreme Court of Nebraska, in Bennett v. Otto, 68 Neb. 652, 654, wherein an appeal had been taken to a district court (a court of record) of that State from the order of a license board, allowing an application for a license for the sale of intoxicating liquors. The applicable statute of Nebraska provided for the hearing of testimony, on any application for a license for the sale of intoxicating liquors, to be had before a *license board,* and that "the testimony on said hearing shall be reduced to writing and filed in the office of application, and if any party feels himself aggrieved by the decision (of the license board) in said case he may appeal therefrom to the district court, and said testimony shall be transmitted to said district court and *such appeal shall be decided by the judge of such (district) court upon said evidence alone."* Upon an appeal to the district court in the above-

582

cited case, that court entered a judgment affirming the order of the license board, whereupon a writ of error was taken to the Supreme Court of Nebraska, where it was contended that the matter was not reviewable because no motion for new trial was filed in the district court. Said the Supreme Court of Nebraska, in ruling against such contention: "We do not think that a motion for a new trial is required in actions of this character. . . . By the express terms of the statute the district court is *required* to pass upon the appeal *from the evidence certified to it by the license board alone.* Of necessity, there could have been no rulings by the district court either in admitting or excluding evidence; and a *trial*, as we understand the word, means an *original* investigation by the district court, and the examination of evidence produced by the parties, including the ruling of the court, which, if not satisfactory, must be brought to the attention of the court by a motion for a new trial. Here there was a mere examination of the *record* (of the license board) presented, and *a motion for a new trial could have alleged nothing except that the (district) court erred in deciding the matter incorrectly upon the record.*" (Italics and parentheses our own.)

The respondents, in support of their position herein, place chief reliance upon the decision of Division Two of this court in City of Macon v. Public Service Commission, 266 Mo. 484. The City of Macon case involved the appeal to this court of a proceeding under the Public Service Commission Law of our State (R. S. 1929, chap. 33, secs. 5121-5281). Like the Workmen's Compensation Act involved in the present case, the Public Service Commission Law (Sec. 5234, R. S. 1929) contemplates and provides for a judicial *review* by the circuit court of any final order or decision of the Public Service Commission, and of the matters, evidence and exhibits adduced before the Public Service Commission, and certified and returned by the Public Service Commission to the circuit court. The method or procedure of bringing up for review in the circuit court the matters, evidence and proceedings had before the Public Service Commission, as prescribed by the Public Service Commission Law, differs somewhat from the method or procedure prescribed by the Workmen's Compensation Act for the review by the circuit court of the matters, evidence and proceedings had before the Workmen's Compensation Commission. The method or procedure for a review by the circuit court of a proceeding under the Public Service Commission Law is thus prescribed by that law (Sec. 5234, R. S. 1929): "Within thirty days after the application for a rehearing is denied, or, if the application is granted, then within thirty days after the rendition of the decision on rehearing, the applicant may apply to the *circuit court* of the county where the hearing was held or in which the (Public Service)

commission has its principal office for a writ of *certiorari or review* (hereinafter referred to as a writ of *review*) for the purpose of having the reasonableness or lawfulness of the original order or decision or the order or decision on rehearing inquired into or determined. . . . Such writ . . . shall direct the (Public Service) commission to certify *its record* in the case to the (circuit) court. On the return day the cause shall be heard by the circuit court, unless for a good cause shown the same be continued. *No new or additional evidence may be introduced* upon the hearing *in the circuit court,* but the cause *shall be heard* by the (circuit) court without the intervention of a jury *on the evidence and exhibits introduced before the commission and certified to by it.* . . . Upon such hearing the circuit court shall enter *judgment* either affirming or setting aside the order of the commission *under review.* In case said order is reversed by reason of the commission failing to receive testimony properly proffered, the court shall remand the cause to the commission, with instructions to receive the testimony so proffered and. rejected, and enter a new order based upon the evidence theretofore taken, and such as it is directed to receive. The court may, in its discretion, remand any cause which is reversed by it to the commission for further action. No court of this state, except the circuit courts to the extent herein specified and the supreme court on appeal, shall have jurisdiction to *review,* reverse, correct or annul any order or decision of the (Public Service) commission . . . The circuit courts of the state shall always be deemed open for the trial of suits brought to *review* the orders and decisions of the commission, as provided in this chapter, and the same shall be tried and determined as suits in equity.'' The Public Service Commission Law further provides (Sec. 5237, R. S. 1929) : ''The commission, any corporation, public utility or person or any complainant may after the entry of *judgment* in the circuit court in any action in *review,* prosecute an appeal to the supreme court of this state. Such appeal shall be *prosecuted* as appeals from judgment of the circuit court in civil cases except as otherwise provided in this article. *The original transcript of the record and testimony and exhibits, certified to by the commission and filed in the circuit court* in any action to *review* an order or decision of the commission, *together with a transcript of the proceedings in the circuit court,* shall constitute *the record* on appeal to the supreme court.'' (Italics and parentheses our own.)

It is plainly observable, from the above-quoted sections of the Public Service Commission Law, that such law contemplates that the circuit court shall act as a *court of review* only, and that no *trial* (in the true and accurate sense and meaning of that term) of a proceeding under the Public Service Commission Law is intended

584

or contemplated by said law to be had in the circuit court, notwithstanding the clause or provision in the law that "the circuit courts of the state shall always be deemed open for the *trial* of suits brought to *review* the orders and decisions of the commission, as provided in this chapter, and the same shall be *tried and determined* as suits in equity." Such provision of the Public Service Commission Law must be viewed and construed in connection with other provisions of the same law, which expressly prescribe that *"no new or additional evidence may be introduced upon the hearing in the circuit court, but the cause shall be heard* by the (circuit) court . . . *on the evidence and exhibits introduced before the* (Public Service) *commission and certified to by it."* As respects the jurisdiction and authority conferred upon the circuit court, there is no essential difference or distinction between that conferred by the Public Service Commission Act and that conferred by the Workmen's Compensation Act, for it is obvious that neither act contemplates a *trial* in the circuit court, and that both acts contemplate and provide for a judicial *review* only in the circuit court, acting as an intermediate court of review.

Construing the Public Service Commission Law, Division Two of our court held in City of Macon v. Public Service Commission, 266 Mo. 484, that, absent a motion for new trial in the circuit court, and absent an exception to the ruling of the circuit court upon such motion for new trial, and absent a bill of exceptions in the circuit court embodying and including the matters and evidence had before the Public Service Commission, and certified and returned to the circuit court by the Public Service Commission pursuant to the requirements of the Public Service Commission Law, there was nothing for review on an appeal to this court from a final judgment of the circuit court affirming an order and decision of the Public Service Commission, except the "record proper" of the circuit court, which "record proper," however, as applied to a proceeding under the Public Service Commission Law, the opinion of our court in the City of Macon case does not attempt to define. In so holding, Division Two of this court applied to the Public Service Commission Law the rule of procedure applicable to appeals from the circuit court in ordinary civil cases, wherein a *trial* is had in the circuit court, and failed to apply the rule of procedure which is generally recognized as applicable to appeals from an intermediate court of review, wherein the error in the *judgment* of such intermediate court of review intrinsically appears from the judgment roll or record of *that* court, without the necessity either of a bill of exceptions, or of a motion for new trial. We deem the decision of this court in the case of City of Macon v. Public Service Commission, supra, to be erroneous and wrong in principle, and to be

in contravention of the letter, objects and spirit of the Public Service Commission Law. The question is therefore presented herein whether our decision in the City of Macon case, supra, should be expressly overruled, or whether such decision should be permitted to stand as a precedent, under the rule or doctrine of *stare decisis*.

We are mindful that our decision in the City of Macon case, construing the Public Service Commission Law, has heretofore seemingly been unquestioned, and has been permitted to stand undisturbed without criticism since January 4, 1916, the date of its promulgation, and that such decision purports to lay down a rule of practice in respect to proceedings on appeal to this court under the Public Service Commission Law. We are also mindful that parties litigant, under the Public Service Commission Law, undoubtedly have conformed their actions, positions, and methods of procedure to the rule of practice laid down by our decision in the City of Macon case. As is said in 7 Ruling Case Law, page 1009, par. 35: "In questions of practice a close adherence by a court to its own decisions, even though it may at times have erred or decided differently from settled adjudications upon the subject is necessary and proper for the regularity and uniformity of practice, and that litigants may know with certainty the rules by which they must be governed in the conducting of their cases." But if the law is to be a reasonably exact science, and if harmony and uniformity in the law is to be maintained, then different rules of practice should not be made (at least, by court decision) to apply and extend to separate statutes which, in their main purposes, objects and provisions, are so nearly alike as to be practically indistinguishable. Both the Public Service Commission Law and the Workmen's Compensation Act manifest the clear and uncertain intention of the lawmaking department of our state government to simplify the appellate procedure with respect to those controversies whereof the initial hearing and determination is vested in a non-judicial or administrative body or commission, by providing for a judicial review of the final orders and decisions of such non-judicial and administrative body to be had before an intermediate appellate court, which court acts, however, only as a court of review, and which intermediate court of review, by express legislative enactment, is without power or authority to try the controversy anew or *de novo*. As was said by this court, en banc, speaking through BOND, C. J., in Klocke v. Klocke, 276 Mo. 572, 581, the doctrine of *stare decisis* "should not weigh with us in the abolition of a precedent not sustainable in reason and in contravention of the statute relied upon to support it." We therefore conclude that the former decision of this court in City of Macon v. Public Service Commission, 266 Mo. 484, should be expressly overruled.

The overruling of our former decision in the City of Macon case should not disturb the rights of those litigants under the Public Service Commission Law who have shaped their course of action in conformity with the rule of practice as laid down in the City of Macon case. The effect of our decision in the present case, overruling our former decision in the City of Macon case, is *prospective* only, and not retroactive, and our decision in the present case is not to be understood or held to affect the rights, positions, actions and procedure of parties litigant in proceedings under the Public Service Commission Law which are pending on motion for new trial in any of the circuit courts of the State, or in which appeals have been allowed and taken to this court at and during the term of the circuit court at which a motion for new trial was ruled, or in which a writ of error has issued from this court. The generally accepted rule is to the effect that the judicial construction of a statute by a court of last resort becomes as much a part of the statute as the text itself, and a subsequent change in the construction of a statute, by judicial decision of the court of last resort, is the same, in effect, as if the statute had been amended by legislative enactment. [Mountain Grove Bank v. Douglas County, 146 Mo. 42, 52.] Consequently, the courts have established and adopted the rule that, where a statute or law has received a given construction by a court of last resort, the rights, positions, and course of action of parties who have acted in conformity with, and in reliance upon, such construction of the statute are not in any wise impaired or disturbed by reason of a change in the construction of the same statute made by a subsequent decision of the court of last resort, in overruling its former decision, and the effect of the change in judicial construction is that it operates *prospectively*, and not retrospectively, in the same manner as though the statute or law had been amended by the Legislature. [7 R. C. L. 1010, and numerous decisions there cited.] Such is the holding and ruling of our own court, en banc, in Klocke v. Klocke, 276 Mo. 572, 582. The foregoing rule is, perhaps, more clearly stated in a syllabus to the case of Kelley v. Rhoads, 7 Wyo. 237, which syllabus is supported by the text and body of the decision, and is found in 75 A. S. R. l. c. 905: "A judgment of the supreme court construing a statute renders it the law for the time being as so construed. Parties have a right to act upon such a decision, and no injury ought to be allowed to result by reason of a dependence thereon as to *pending proceedings,* if the decision is subsequently changed, any more than in the case of a repeal or amendment of a statute."

Since the issuance of our alternative writ in the instant proceeding, and pending the submission thereof, Division Two of this court, in the case of Dougherty v. Manhattan Rubber Mfg. Co., 325 Mo. 656,

29 S. W. (2d) 126, has seemingly held (perhaps, only by way of implication) that the filing of a motion for new trial and a bill of exceptions in the circuit court are necessary and prerequisite procedural steps in order to present for appellate review the transcript of the matters, proceedings and evidence had and taken before the Workmen's Compensation Commission, and certified and returned to the circuit court for its review, by the Compensation Commission. As respects such holding and only to that extent, the decision of Division Two of this court in the Dougherty case, supra, must likewise be overruled. The decision of the St. Louis Court of Appeals in the compensation case of Brocco v. May Department Stores Co., 22 S. W. (2d) 832, and the decision of the Kansas City Court of Appeals in the compensation case of Lilly v. Moberly Wholesale Grocery Co., 32 S. W. (2d) 1099, both of which decisions construe Section 44 of the Workmen's Compensation Act contrary to our conclusion and decision herein, must also be overruled.

Our decision herein, however, is not to be understood and taken to mean, or to hold, that the circuit court, in a proceeding under the Workmen's Compensation Act, or under the Public Service Commission Law as well, may not be called upon or required to rule, or to make and enter an order disposing of, matters which are properly and truly the subjects of objection and exception, and which are similar to those matters as ordinarily arise in the course and progress of a *trial*, and which are otherwise *dehors* the record of the circuit court unless made so by order of that court, and therefore must be saved and preserved by bill of exceptions, and by motion for new trial, in order to become *of record* in the circuit court for the purpose of appellate review. What we do decide and hold herein is that the matters, proceedings and evidence had and taken in a compensation proceeding before the Workmen's Compensation Commission, and certified and returned by the commission to the circuit court for its judicial review, intrinsically constitute *the record* of the circuit court in such compensation proceeding, by virtue of the express language and requirement of the Workmen's Compensation Act, and that such record of the circuit court is reviewable on an appeal duly allowed and taken to a superior court from a judgment of the circuit court thereon, without the necessity, and in the absence, of a bill of exceptions and a motion for new trial in the circuit court.

III. But, having reached the conclusion herein that neither a motion for new trial nor a bill of exceptions was necessary and essential in order to preserve for review by the respondents the proceedings and evidence had before the Workmen's Compensation Commission in the Brocco compensation proceeding, and reviewed by the circuit court, we are met with the further insistence of respondents that the appeal to the St. Louis

Court of Appeals in the Brocco compensation proceeding was not allowed and taken at the *judgment term* of the circuit court, in which circumstance the respondents had no jurisdiction of the appeal, and therefore respondents should have dismissed the appeal for want of jurisdiction.

Section 44 of the Workmen's Compensation Act (R. S. 1929, sec. 3342) expressly requires that an "appeal from the circuit court shall be *allowed the same as in civil actions*." Our Code of Civil Procedure, applicable to civil actions, provides (R. S. 1929, sec. 1020): "No such appeal shall be *allowed* unless: First, it be made *during the term at which the judgment* or decision appealed from *was rendered;* and, second, the appellant or his agent shall, during the *same* term, file in the court his affidavit, stating that such appeal is not made for vexation or delay, but because the affiant believes that the appellant is aggrieved by the judgment or decision of the court."

It appears from the recitals of the relators' petition herein that the judgment of the circuit court of the city of St. Louis in the Brocco compensation proceeding was rendered on October 4, 1928, and that, within four days thereafter, and during the same term of the court, the relators filed therein a so-called motion for a new trial and for a rehearing of said compensation proceeding. The terms of the circuit court of the city of St. Louis (of which we take judicial notice) are held annually on the first Monday of each of the months of February, April, June, October and December. [R. S. 1919, sec. 2617; R. S. 1929, sec. 2114.] The October, 1928, term of said circuit court commenced on Monday, October 1, 1928, and the next succeeding term of said circuit court (December, 1928, term) commenced on Monday, December 3, 1928. It therefore appears that the judgment of the circuit court of the city of St. Louis in the Brocco compensation proceeding was rendered at the October, 1928, term of said circuit court, and that relators filed their so-called motion for new trial and for rehearing at the same term of that court. It further appears from the recitals of relators' petition herein that the so-called motion for new trial and for rehearing, filed by relators in said compensation proceeding at the October, 1928, term of said circuit court, was overruled by the circuit court on December 17, 1928, and during the December, 1928, term of said circuit court, at which term of said circuit court, and on December 29, 1928, the relators filed their affidavit for appeal and were allowed an appeal to the St. Louis Court of Appeals. Thus, it appears that the appeal to the St. Louis Court of Appeals from the judgment of the circuit court (rendered at the October, 1928, term) in the Brocco compensation proceeding was not allowed by the circuit court at the *judgment* term, but was allowed at the next succeeding

term. Hence, the appeal to the St. Louis Court of Appeals in the Brocco compensation proceeding was not allowed and taken within the time prescribed by Section 44 of the Workmen's Compensation Act, and by the Code of Civil Procedure, which, by reference, is made applicable to appeals from the circuit court in proceedings under the Workmen's Compensation Act, unless the filing of the so-called motion for new trial and for rehearing by relators, in said compensation proceeding at the October term, 1928, of the circuit court, and the continuance of such motion to the succeeding December, 1928, term, when the motion was overruled by the circuit court, had the effect of postponing the finality of the judgment of the circuit court (for the purpose of the allowance of an appeal thereform) until the December, 1928, term of said circuit court, at and during which term the appeal was allowed. Respondents insist that, since we have reached the conclusion that the filing of a motion for new trial was not necessary or essential in the Brocco compensation case, in order to make the record of the circuit court. in said compensation case reviewable on appeal to a superior court of appeals, it necessarily follows, as a consequence of our conclusion, that the so-called motion for new trial and for rehearing performed no useful function, office or purpose, and amounted only to a mere suggestion to the circuit court that its judgment was wrong, and, the motion not having been acted upon or ruled by the court at the judgment term, the judgment of the circuit court became final, for all purposes, at the end of the October, 1928, term of the circuit court, at which term the judgment was rendered.

The prevailing weight of juristic authority seems to be to the effect that an *unnecessary* motion for a new trial, and a ruling upon such *unnecessary* motion, are ineffectual to extend, or to postpone, the statutory time for the allowance and taking of an appeal, or for suing out a writ of error, from a final judgment of a court of record. [3 C. J. 1051, and numerous decisions there cited in the footnotes.] The rule is otherwise, however, when a motion for new trial is *necessary and essential* to the review and consideration, in an appellate court, of the procedural errors of an inferior court. The latter rule is thus stated in 2 Ruling Case Law 107, 108: "Where the statute provides in general terms that the appeal or proceedings in error shall be instituted within a certain time from the rendition or entry of the judgment or decree, it is the general rule that where a motion for a new trial or rehearing is seasonably made, the time is to be computed from the date of the denial of the motion, and not from the date of the rendition or entry of the judgment or decree, *where the motion was necessary to the consideration in the appellate court of the questions involved.* The reason for this rule is that the character of finality does not attach to the

judgment or decree until the motion has been decided.'' (Italics ours.) And so our own court, in construing the statute prescribing the time of allowance of appeals in civil actions (now Sec. 1020, R. S. 1929), has uniformly held that the term of the circuit court at which a (timely filed) motion for new trial is overruled is to be regarded as the term at which the judgment becomes a finality for the purposes of review, although the formal entry of the judgment may have been made at a previous term of the court. [State ex rel. v. Smith, 104 Mo. 419, 423, and cases there cited: Walter v. Scofield, 167 Mo. 537; Chandler v. Gloyd, 217 Mo. 394, 404; Reese v. Fife (Mo. Sup.), 279 S. W. 415, 423.] However, in each of those cases the motion for new trial was a *necessary and essential* motion, in order to bring to the consideration and review of the appellate court the procedural errors of the court *nisi* involved on the appeal or writ of error.

In Smith v. Smith, 48 Mo. App. 612, an appeal in a divorce proceeding was dismissed by the St. Louis Court of Appeals upon the ground that the appeal was not allowed and taken at the term of the circuit court at which the decree of divorce was entered. A motion to set aside the decree, upon the grounds of fraud, was filed in the circuit court during the judgment term, but too late to serve the office of a statutory motion for new trial, which motion was continued, by consent of the parties, to a subsequent term of the circuit court, when the motion was overruled, and an appeal was allowed to the Court of Appeals. Speaking to the question whether the effect of the filing of the motion at the judgment term of the circuit court, and the continuance of the motion to a subsequent term, amounted to an extension of time for the allowance of the appeal from the judgment of divorce, the Court of Appeals, speaking through ROMBAUER, P. J., said: ''Treating it (the motion) as a suggestion to the court to vacate its own decree made during the term when the decree was rendered, we are met with the difficulty that, even if the action of the court upon such a suggestion were subject to review on appeal, the appeal is not taken during the term when the final judgment was rendered. The order overruling a motion for new trial is, in contemplation of law, the final judgment from which an appeal lies; hence, when such motion is overruled at a term succeeding the one when the judgment was entered, the final judgment is entered in contemplation of law for the purposes of an appeal at such succeeding term. But we can on no principle of law extend this rule to motions or suggestions filed in a case, *which are not provided for by statute,* and the pendency of which can in no sense affect the character of the judgment previously entered. Were the rule otherwise, a party could, by filing a motion on the last day of the term, and having it continued under

the general order of the court affecting all pending motions, prevent a judgment entry from becoming final for an indefinite period. . . . It results that this appeal must be dismissed." (Italics ours.)

In a recent decision, our own court, en banc, has held that a motion to set aside a divorce decree, filed in the circuit court at the judgment term, but too late to be treated as a motion for new trial, and setting out grounds other than those usually found in a motion for new trial, had no legal status as a motion and amounted to a mere suggestion to the court, and that such motion will not operate to carry a cause over the judgment term to a subsequent term of the circuit court, for the purpose of the allowance of an appeal, but the judgment in the cause becomes final for all purposes at the expiration of the term of court at which it is rendered. [State ex rel. Conant v. Trimble, 311 Mo. 128.] Former decisions of our court, holding to a contrary rule or doctrine, are expressly overruled by our decision in the Conant case, wherein we said, in speaking of the effect of motions which have no legal status (311 Mo. l. c. 144): "The rights of the court of its own motion, or upon the mere suggestion of a party, to set aside a judgment, expires with the close of the judgment term."

In Warren v. Lead & Zinc Co., 255 Mo. 138, a demurrer to plaintiff's petition was sustained by the circuit court, and the plaintiff declining to plead further, the circuit court rendered a final judgment for defendant. In due time, and at the same term of the court at which the judgment was rendered, plaintiff filed a motion in arrest of judgment, which motion was overruled by the circuit court during the same term at which the motion was filed, and at which the judgment was rendered. Plaintiff sued out a writ of error from this court, the writ of error being brought within one year after the date on which the motion in arrest of judgment was overruled by the circuit court, but more than one year after the date on which the judgment of the circuit court was rendered. The defendant in error (defendant below) filed in this court a motion to dismiss the writ of error on the ground that it was not brought within one year from the date of the rendition of the judgment in the circuit court, as required by the applicable statute relating to writs of error. Division Two of this court, in dismissing the writ of error, said (255 Mo. l. c. 143 et seq.): "Defendant in error insists that in the present case the motion in arrest performed no necessary or useful function for the purpose of a review by appeal or writ of error, and therefore should not be permitted to affect the date of the rendition of the final judgment. Plaintiff in error, replying to this, admits that the filing of the motion in arrest in the case at bar was not necessary in order to have this court review

the trial court's action in sustaining said demurrer, but insists that so long as the motion in arrest was pending the 'whole matter rested within the breast of the court,' and during said time the judgment might be 'arrested, modified or set aside.' For that reason it is urged that the judgment was not final, for the purpose of appellate review, until the motion in arrest was overruled. . . . It is a well-settled rule that the ruling of the trial court upon a demurrer to the petition is a matter that appears upon the face of the record proper, and no exception need be saved in the trial court to command an appellate review of the court's action thereon (citing cases). It need not be raised in the trial court by motion in arrest. . . . Referring to the practice at common law we find that the filing of a motion in arrest of judgment was not only not necessary in order to raise the error committed by the court in ruling on a demurrer but in fact such practice was not permissible. . . . If, then, the motion in arrest not only did not perform a necessary or useful function in the case at bar for the purpose of an appellate review but in fact performed no office in the trial court and the filing of the same for the purposes sought was improper and not recognized as the proper practice, it should not be said that it had the effect of delaying the date of the final judgment already entered and thereby be given the power to toll the one-year Statute of Limitations within which time the writ of error must be brought.''

While relators, perforce of their position herein, are forced to the concession that a motion for new trial did not perform any necessary function or office in the Brocco compensation proceeding for the purpose of an appellate review of that proceeding, nevertheless relators urge that the so-called motion for new trial and for rehearing, filed in the circuit court in the Brocco compensation proceeding, is but the equivalent of the ''petition for rehearing,'' which is common to the practice in the appellate courts of our State, and which relators assert has the effect, in an appellate court, of suspending the finality of a decision and judgment of the appellate court until the date of the overruling of the petition for rehearing. A petition or motion for rehearing, however, is not a statutory motion, and has no legal status as a motion, except only as such motion for rehearing is dependent upon the rules and practice of the Supreme Court, and of the courts of appeals, of our State. [Ex parte Craig, 130 Mo. 590, 594.] We find no mention of or provision for, a motion for rehearing in any of the legislative enactments of our State. The ''motion for rehearing,'' in the practice of our State, is purely the creation of our appellate courts, and is entertained in our appellate courts only because the rules and practice of those courts allow the filing of such motion, which, however, is considerable only in the discretion

of the appellate court, and not as a matter of right. Inasmuch as the so-called motion for new trial and for rehearing, filed by relators in the circuit court in the Brocco compensation proceeding, performed no necessary or useful function for the purpose of an appellate review, and therefore had no legal status, it must be viewed in the character of a non-statutory motion, which amounted only to a mere suggestion to the circuit court that the court had erred in rendering a wrong judgment (that is, a judgment which, if wrong, the circuit court should have set aside of its own motion), and hence such motion did not have the effect of postponing or extending the finality of the judgment beyond the term of the circuit court at which the judgment was rendered. [State ex rel. Conant v. Trimble, 311 Mo. 128, 141, 146; Marsala v. Marsala, 288 Mo. 501, 504.] The applicable rule is thus clearly stated in 3 C. J. 1053, 1054: ''Motions which are not provided for by statute, and the pendency of which can in no sense affect the character of the judgment previously entered, are not within the rule that a motion for a new trial postpones the running of the time limit for taking appeals.''

Since the filing and continuance of the so-called motion for new trial and for rehearing did not have the effect of postponing or extending the finality of the judgment rendered by the circuit court of the city of St. Louis in the Brocco compensation proceeding, and since the relators' petition herein discloses that the appeal from such judgment was not allowed and taken during the term of the circuit court at which the judgment appealed from was rendered, as required by Section 44 of the Workmen's Compensation Act and by the statute (R. S. 1929, sec. 1020) providing for the allowance of appeals in civil cases, it is not right that we should require the respondents, by the award and issuance of our peremptory writ of mandamus, to exercise jurisdiction of the said appeal, and to adjudicate and determine the merits thereof, as prayed by relators herein. This, because we should not require a Court of Appeals to exercise full jurisdiction in a cause or proceeding over which the Court of Appeals apparently has none, as disclosed by the record of the cause, for the reason that the appeal therein was not taken within the statutory time.

It follows, for the reasons last stated, that the peremptory writ prayed herein should be denied, and that our alternative writ should be quashed. It is so ordered.

PER CURIAM:—The foregoing opinion of SEDDON, C., is adopted as the opinion of the Court en Banc. All of the judges concur.